In re Estate of Bowman.

(No. 745—Decided November 19, 1956.)

*Messrs. Goubeaux & Goubeaux* and *Mr. I. L. Jacobson,* for appellants.

*Messrs. Spidel, Staley & Hole,* for appellee.

WISEMAN, J. This is an appeal on questions of law from a judgment of the Probate Court of Darke County overruling exceptions filed to an administrator's account.

Warren E. Bowman was appointed administrator of the estate of William W. Bowman, deceased. Warren E. Bowman, the administrator, was the son of the decedent, and Arthur Bowman, William P. Bowman and Albert L. Bowman were sons, and the exceptors herein.

The father lived in the home of Warren E. Bowman from January 1, 1951, to May 1, 1953, the day of his death. Eula Bowman, the wife of Warren E. Bowman, attended the father and rendered services to him during this period in the way of nursing, laundry, preparation of food, etc. After the appointment of Warren E. Bowman as administrator, Eula Bowman presented a claim in the amount of $3,125 for services rendered the father, which was allowed and paid by the administrator. Exceptions were filed to the account of the administrator, and a hearing was had thereon. The Probate Court overruled the exceptions, and from that order the exceptors appeal. A bill of exceptions has been filed. The burden to establish the validity of the claim is on the administrator. *Steward* v. *Barry, Admr.,* 102 Ohio St., 129, 131 N. E., 492.

It is the contention of the appellants that the evidence offered by the administrator did not rise to the required degree of proof as laid down in *Hinkle et al., Exrs.,* v. *Sage,* 67 Ohio St., 256, 65 N. E., 999, which held that where the claimant is a member of the family of the person for whom the service is rendered, he can not recover in such case for services "unless it be established that there was an express contract upon the one side to perform the services for compensation, and upon the other side to accept the services and pay for them," and that "the contract must be established by clear and unequivocal proof." The administrator contends that the family relationship existing in *Hinkle* v. *Sage* did not exist in the instant case and, therefore, the principle of law laid down in that case is not applicable. The point is made that, whereas in *Hinkle* v. *Sage* the claimant was a blood relative and rendered the services in the decedent's home, in the instant case the claimant was a daughter-in-law of the decedent and not a blood relative and

the services were rendered in claimant's home. On the question of blood relationship, the case of *Merrick* v. *Ditzler*, 91 Ohio St., 256, 110 N. E., 493, is a complete answer. The court held that the rule in *Hinkle* v. *Sage* was applicable, even though the claimant was not a blood relative. The court, on page 258, said:

"The evidence clearly shows that the plaintiff in error, although unrelated to the defendant Ditzler, was nevertheless a *de facto* member of his family, enjoying and sharing the comforts of the Ditzler home and assisting in the household duties in all their detail, and she therefore comes within the rule established in Ohio in the first proposition of the syllabus of *Hinkle et al., Exrs.,* v. *Sage,* 67 Ohio St., 256, and cannot recover for services so rendered while a member of the family in the absence of an express contract upon her part to perform the services for compensation and upon the part of Ditzler to accept and pay for such services."

In the *Ditzler case* the court modified the rule as to the degree of proof required and held that the express contract is required to be proved by "clear and convincing" evidence, rather than "clear and unequivocal." In *Anderson, Exr.,* v. *Houpt,* 43 Ohio App., 538, 184 N. E., 29, the court made a similar ruling. The second paragraph of the syllabus is as follows:

"No contract to pay for services as between parties occupying family relationship will be implied even though performer is stranger and not blood relative."

The case of *Weber* v. *Billman et al., Exrs.,* 165 Ohio St., 431, 135 N. E. (2d), 866, is not in point.

In 42 Ohio Jurisprudence, 493, Section 12, is found this statement:

"Usually some blood relationship,—frequently that of parent and child,—exists between the parties. But the rule is not confined to cases in which there is blood relationship,—or even to relationship by marriage. A person may be a member of the family within that rule although the performer is a stranger and not a blood relative or one by marriage."

See, also, 7 A. L. R. (2d), 8, 134.

The appellee contends that the rule in *Hinkle* v. *Sage, supra* (67 Ohio St., 256), is not applicable to a factual situation where the person for whose benefit the service was rendered lived in

the home of the claimant; that the rule should be limited in its application to a factual situation where the claimant lived in the home of the person receiving the services. We can find no such distinction made by the courts, although the living arrangement has a direct bearing on the question as to whether the services rendered were reciprocal and mutually beneficial to the claimant and the recipient. The basic reason for the rule is that the element of family relationship not only rebuts the general implication of a promise to pay for services rendered and accepted but also raises an affirmative presumption which will preclude recovery for services unless an agreement as to the compensation is established. This family relationship may exist regardless of whether the service is rendered in the home of the claimant or in the home of the recipient. The contention of appellee was rejected by this court in the case of *In re Estate of Roberts,* 68 Ohio App., 97, at page 102, 38 N. E. (2d), 427, where the court said:

"We are of the opinion that the conditions under which the parties lived was that involving family relationship and that in order to establish a claim for services for the care of Roberts a contract must be shown by clear and convincing evidence. Ice has failed to prove such a contract by the requisite evidence. *Hinkle* v. *Sage,* 67 Ohio St., 256, 65 N. E., 999; *Merrick* v. *Ditzler,* 91 Ohio St., 256, 110 N. E., 493; *Arns, Exrs.,* v. *Disser,* 40 Ohio App., 163, 178 N. E., 27. It will be at once suggested that these three cases involve a claim by one coming into the family, to collect for services rendered to a member of the family. In the case at bar the collection is sought to be made by Dr. Ice, who was nominally the head of the family, from the estate of one who came into and became a part of the family. *We do not believe that this condition is sufficient to change the rule that is announced in the above-cited cases.*" (Emphasis ours.)

However, it should be pointed out that the family relationship is held to exist most often where the claimant resides in the home of the recipient. This brings us to a determination of the most important question in this case: What is the test to be applied in determining whether a family relationship exists? Very few cases lay down a test; the court on a given set of facts

simply concludes that a family relationship does or does not exist. This question is annotated extensively in 7 A. L. R. (2d), beginning at page 8. On page 28 appears the beginning of the discussion on the factors to be considered in determining whether a family relationship exists, wherein it is stated:

"In seeking to establish such an understanding, various factors, such as the degree of relationship, the nature of the services, and the financial condition of the parties, are of considerable importance. Likewise, in seeking to corroborate or strengthen the presumption of gratuity, such factors are of importance. And such factors, and others, may have some effect on the primary question as to whether a family relationship exists."

Close relationship, by blood or marriage, although the dominant consideration, is not alone sufficient to establish a family relationship; the degree of relationship may strengthen or weaken the presumption; the more distant the relationship the weaker the presumption; and the closer the relationship the stronger the presumption. Furthermore, it is stated that the presumption attends only where it is shown that the service or services are such as members of a family usually and ordinarily render to each other.

What appears to be the best test is, reciprocity or mutuality of benefits. Although there is a diversity of opinion on the application of this test, it is the one most frequently applied in the several jurisdictions, and the courts have held that where reciprocity or mutuality of benefits between claimant and the recipient did not exist the presumption that the services were rendered gratuitously does not attend. On page 32 of the annotations reference is made to one Ohio case subscribing to this principle: *In re Baldwin, Deceased* (1943), Probate Court of Hardin County, 30 Ohio Opinions, 208, 15 Ohio Supp., 30. This is a well-considered opinion in which the ruling is based on a statement in 28 Ruling Case Law, 682 and 683, which lays down the reciprocity and mutual benefit test. Research has disclosed two other Ohio cases which apply the reciprocal and mutual benefit test. In *Hoel* v. *Cook,* 20 Ohio Law Abs., 375, in a case where the facts were similar to the facts in the instant case, Judge Ross, in discussing this question on page 377, said:

"Upon the other claim for maintenance, support, board and lodging we are met at the outset with a query involving the status of the decedent in the house of the plaintiff. Was she or was she not a member of the family of plaintiff? She was given a room of her own in his home. She sat at his table, partook of his food, and had the freedom of the house, and she was cared for by the members of the family of the plaintiff when ill or ailing. She on several occasions rendered some small casual services to his household by washing dishes and doing little things about the house, but she had no definite duties about the household. There is not sufficient evidence presented, however, to warrant the court in concluding as a matter of law certainly that she was a member of his family or was considered so. Her sojourn in the home of the plaintiff was considered by all but a temporary visit and for the convenience of the decedent. *The real test of whether or not a family relationship exists is whether there is such a mutual exchange of benefit, obligation, responsibility and services, that no presumption of implied obligation to pay for the services of any of those involved is created. There is present a reciprocal consideration for all services rendered. The blood relationship of the parties is not controlling and is often inconsequential.*

"The instant case presents no situation where the relationship of the parties is so close in consanguinity as to destroy any presumption that the services rendered were to be paid for. There certainly was no obligation upon the half-nephew to furnish board and lodging to his half-aunt. She made also more than merely a casual temporary visit, such as any such relative could make as a house guest without raising a presumption that she intended to pay for the consideration given her. She was a boarder and lodger. We have no hesitancy in finding, therefore, that the facts, which are not in serious conflict, unqualifiedly show that no family relationship existed between the plaintiff and decedent such as is contemplated in the case of *Hinkle et al., Exrs.,* v. *Sage,* 67 Ohio St., 256, and in *Merrick* v. *Ditzler,* 91 Ohio St., 256, or in the case of *Edgar* v. *Schock, Admr.,* 16 C. C. (N. S.), 118." (Emphasis ours.)

This same test was applied in *Thompson* v. *Jones* (1910), 13 C. C. (N. S.), 493, 33 C. D., 182, where the decedent, the re-

cipient, lived in the home of his sister, the claimant, who rendered personal services to him. The court in its opinion rejected the application of the rule of *Hinkle* v. *Sage, supra* (67 Ohio St., 256), and on page 494 said:

"It is very doubtful whether this case comes within the rule of *Hinkle* v. *Sage*. The 'family relation' spoken of in that case and similar cases does not rest wholly on the blood relationship of the parties, but rather the relation that is borne to the family as a whole. There is no reason why a brother boarding with a sister should not pay for his board the same as a stranger if he does not in turn render to his sister some more recompense than a stranger. * * *

"* * * It further appears that Peter Edward Fritsch was in poor health while at his sister's and part of the time was very sick, requiring constant attention with considerable expense for medicine and washing, and it further appears that during this time he did not in any way contribute to the maintenance of the family. He performed no work and paid no money which aided in its support."

In 58 American Jurisprudence, 521, Section 12, it is stated:

"The reason, or one of the reasons, for the rule that where parties are members of the same family their services are presumed to be gratuitous is that one rendering service to the other receives reciprocal services in return. This view becomes particularly reasonable on reflection on the principle frequently laid down that *where mutuality of benefits is wanting, the services will not be presumed gratuitous*." (Emphasis ours.)

This reasoning commends itself to this court. In the case at bar the claimant rendered valuable personal services to the decedent. The decedent was a personal and a financial burden to the claimant. He contributed nothing in the way of finances or services to the household, being 82 years of age at the time of his death and ill during his residence with the claimant, the illness necessitating personal care and attention by the claimant.

Under the rule in *Hinkle* v. *Sage, supra* (67 Ohio St., 256), we would conclude that the evidence did not support the conclusion that an express contract existed between the parties whereby claimant agreed to render the services for compensation and

the decedent agreed to recompense the claimant for her services. However, it is our conclusion, for the reasons herein stated, that the rule in *Hinkle* v. *Sage* has no application on the ground that a family relationship did not exist, due to the absence of reciprocal and mutual benefits between the parties, and that the claim has been properly established. We are not laying down a new principle of law, but simply applying a well-established principle of law which has been approved by several courts of this state where the factual situation justified the application.

The amount of the claim was reasonable, in light of the nature and extent of the services rendered. There being no error in the record prejudicial to the rights of appellants, the judgment is affirmed.

*Judgment affirmed.*

MILLER, P. J., and HORNBECK, J., concur.