DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, which granted summary judgment in favor of appellee Key Trust Company of Ohio. For the reasons that follow, we reverse the decision of the trial court.
Appellant Melvin Jankowski ("Melvin") is the son and sole heir of appellant Veronika Jankowski ("Mrs. Jankowski").
Mrs. Jankowski is now deceased, though she was alive and a party to this case when it was filed in the trial court. This case began when Melvin's brother and Mrs. Jankowski's son, Robert Jankowski, ("Robert") died. Upon Robert's death, Melvin and Mrs. Jankowski filed a claim against his estate for services rendered to him during his lifetime. Appellee is the executor of Robert's estate. Appellee denied both Melvin's and Mrs. Jankowski's claims, and this litigation ensued. By the time this case was filed in the trial court, Mrs. Jankowski was in a nursing home and was incompetent to testify. The only source of testimony in this case is Melvin.
In 1989, Robert, who had suffered a stroke, moved in with his elderly mother, Mrs. Jankowski. According to Melvin, when Robert moved in with his mother, Robert and his mother agreed that Robert would pay his mother $600 per month as rent. Melvin testified that he heard this conversation where Robert agreed to pay his mother this amount in rent, and he testified that there was precedent for such an arrangement since he had paid rent to his mother when he lived with her as an adult. However, Robert and his mother agreed that Robert would not make payments monthly; instead, Robert was to pay his mother upon his death. Melvin testified that he heard Robert repeatedly say that his mother "would be taken care of" when he (Robert) died, and that Mrs. Jankowski "would get it in the end." Both Melvin and Mrs. Jankowski understood that if Robert predeceased his mother, Robert would arrange for his mother to be compensated the $600 per month. When asked whether Robert was promising, by his remarks, to leave his estate to his mother by will, Melvin responded that he did not know; all he knew was that Robert had promised to pay his mother the agreed-upon amount upon his death if he predeceased her.
Robert died testate on March 20, 1998, leaving an estate of approximately $330,000. He had no surviving spouse or children. According to the terms of his will, Robert left the residue of his estate (after payment of debts) to the Toledo Animal Shelter, making no provision for his mother. On March 17, 1999, Melvin and Mrs. Jankowski made a claim against Robert's estate. Mrs. Jankowski claimed $69,699.03 for unpaid rent, utilities, tax, insurance, and various household expenses, and Melvin made a claim for $24,000 for "the furnishing of necessaries" to Robert.[1] Appellee denied both claims, and Melvin and Mrs. Jankowski filed the instant lawsuit.
In the trial court, both sides moved for summary judgment. The trial court granted appellee's motion and denied
Melvin's and Mrs. Jankowski's motion. Mrs. Jankowski then died on January 2, 2001. Melvin now appeals, both individually and now as the executor of Mrs. Jankowski's estate, setting forth the following three assignments of error:
 "I. The Trial Court erred in holding that a `family relationship' existed between Veronika K. Jankowski and Robert Jankowski when no evidence was submitted to substantiate that conclusion, thus improperly presuming that the services rendered to the Decedent were gratuitous.
 "II. The Trial Court erred in denying the Plaintiffs'/Appellants' Motion for Summary Judgement since the Defendant/Appell[ee] submitted no evidence that a `family relationship' existed between Veronika K. Jankowski and Robert Jankowski and, as such, Veronika K. Jankowski is entitled to a judgement in her favor as a matter of law.
 "III. The Trial Court erred in granting Summary Judgement to the Defendant/Appellee on the basis of a lack of an express agreement to pay rent where there was conflicting evidence on the issue."[2]
Since all three assignments of error relate to the trial court's grant of summary judgment to appellee, we shall review them together. We review the trial court's judgment granting summary judgment de novo.Conley-Slowinski v. Superior Spinning (1998), 128 Ohio App.3d 360, 363, discretionary appeal not allowed (1998), 83 Ohio St.3d 1464. A movant is entitled to summary judgment pursuant to Civ.R. 56(C) when he or she demonstrates:
 "* * * that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party." Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 617.
We must address two initial matters before turning to the assignments of error. First, appellee claims that appellants have waived any argument about the so-called "family relationship rule" because they did not raise this argument in the trial court. It is generally true that a party may not raise an issue for the first time on appeal. See, e.g.,LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. However, the rule exists to prevent a party from raising on appeal an issue that was not brought to the trial court's attention at a time when the alleged error could have been avoided or corrected. _Id.; Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, paragraph one of the syllabus, 210. In the instant case, appellee raised the family relationship rule in the trial court, and the court relied on that rule in reaching its decision. Since the issue was brought to the trial court's attention and the trial court was allowed to fully consider it, appellants have not waived their right to argue the family relationship rule on appeal.
Next, appellee contends that, by operation of unanswered admissions during discovery, appellants have admitted that an express contract did not exist. Appellants admit that they were one week late in responding to the request for admissions, but they contend that they did, in fact, deny the admission that there was not an express contract. In their reply memorandum in support of their motion for summary judgment, appellants formally requested that the trial court honor their denial of the admission. The trial court did not rule on this request, but in its judgment entry the trial court did not deem the request admitted. (The trial court considered the evidence and held that an express contract did not exist.) Since the trial court did not rule that appellants had admitted that no express contract existed, we likewise will not consider the issue admitted. Thus, as we turn to the assignments of error, the following two issues are properly before us: (1) whether an express contract existed; and (2) whether and how the family relationship rule applies to this case.
Where a member of a family provides services to another member during that person's lifetime, it is presumed that the services were provided gratuitously as a natural outgrowth of the duty, care, and affection that family members show one another. The Supreme Court of Ohio stated this "family relationship rule" as follows:
 "1. In an action to recover compensation for services, when it appears that the plaintiff was a member of the family of the person for whom the services were rendered, no obligation to pay for the services will be implied; and the plaintiff cannot recover in such case unless it be established that there was an express contract upon the one side to perform the services for compensation, and upon the other side to accept the services and pay for them.
 "2. Such contract may be in writing or it may rest entirely in parol, and it may be proved by direct or indirect evidence; but to entitle the plaintiff to recover, the contract must be established by clear and unequivocal proof." Hinkle v. Sage (1902), 67 Ohio St. 256, paragraphs one and two of the syllabus.
Later, the Supreme Court clarified that, in cases where the person who allegedly made the promise is deceased and the case is brought against that person's representative, the degree of proof to establish the express contract is "clear and convincing," and not "clear and unequivocal," as stated in Hinkle. See Merrick v. Ditzler (1915),91 Ohio St. 256, paragraph two of the syllabus.
Courts have attempted to define what it means to be a "member" of a family within the meaning of Hinkle. Generally, courts hold that a person is a member of the family if there is a mutuality of benefits. See, e.g., In re Estate of Bowman (1956), 102 Ohio App. 121, 125; Estateof Winfred C. Combs (Mar. 13, 1998), Hamilton App. No. C.-961056, unreported.[3] In other words, a person is a member of a family if there is reciprocal benefit to both parties in the way of care, companionship, and services, either personal or financial. Where such mutuality of benefits does not exist, the proper presumption is that the services were not rendered gratuitously. In re Estate of Bowman,102 Ohio App. at 125. However, even if a family relationship exists, a claimant can overcome the presumption that the services were rendered gratuitously with clear and convincing evidence of an express contract. Therefore, if the record contains clear and convincing evidence of an express contract, the fact that a family relationship existed is of no consequence.
A contract is formed when there is mutual assent and consideration.Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 11. An express contract exists where the parties' assent to the terms of the contract are expressed by an offer and acceptance. Legros v. Tarr (1989),44 Ohio St.3d 1, 6. In addition to mutual assent and consideration, there must be a meeting of the minds, and the essential terms must be definite and certain. Nilavar, 127 Ohio App.3d at 11. See, also,Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations
(1991), 61 Ohio St.3d 366, 369; _Mr. Mark Corp. v. Rush, Inc. (1983),11 Ohio App.3d 167, 169 (regarding certainty of essential elements). In a contract other than one for the sale of goods, the essential terms are, generally, the parties and the subject matter. Nilavar,127 Ohio App.3d at 13. Expressed another way, terms of a contract are sufficiently certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Mr. Mark Corp.,11 Ohio App.3d at 169, quoting Restatement of the Law 2d, Contracts (1981), 92, Section 33.
In this case, the record amply supports the existence of an express contract by clear and convincing evidence. Mrs. Jankowski allowed Robert to live in her home in exchange for his promise to pay her $600 per month. This was a specific oral agreement. There is no evidence to the contrary. The fact that Melvin was not sure whether the payments were to be made as a debt against the estate or as a bequest does not change the fact that Mrs. Jankowski and Robert expressly agreed that payment was to be made. The essential terms of the contract were sufficiently certain since they provided a "basis for determining the existence of a breach and for giving an appropriate remedy." Id. Here, Robert agreed to pay his mother $600 per month, and he died without doing so. Clearly, that is a breach of the contract. The remedy is clear as well: Robert must pay to Mrs. Jankowski the agreed-upon amount. Based upon the record, we find that Mrs. Jankowski and Robert entered into an express agreement that Robert could live in the house for $600 per month. Therefore, appellants have overcome the presumption arising from the family relationship rule.
Appellee contends that if an express contract was formed, it is an "unenforceable contract to make a will."
However, we have previously held that a family member may recover inquantum meruit for services rendered to another family member where the parties have entered into an unenforceable oral contract to leave property by will. See Sabin v. Graves (1993), 86 Ohio App.3d 628, 633, cause dismissed (1993), 66 Ohio St.3d 1503; Bemis v. Bemis (1948),83 Ohio App. 95, 101. Therefore, even if the parties entered into an express oral contract to leave property by will, appellants would still be entitled to recover in quantum meruit the reasonable value of their services. Since Mrs. Jankowski and Robert contracted for $600 per month, we presume that amount is the reasonable value of the services. Accordingly, we find that the trial court erred in granting appellee's motion for summary judgment and denying appellants' motion for summary judgment. Appellants are entitled to recover $600 per month for the amount of time that Robert lived in Mrs. Jankowski's home.
Upon consideration whereof, we find that substantial justice was not done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is reversed and remanded to determine the total amount that the estate of Robert Jankowski owes the estate of Veronika Jankowski. Appellee is ordered to pay the court costs of this appeal.
 __________________________ PIETRYKOWSKI, P.J., Judge
 Peter M. Handwork, J., James R. Sherck, J. CONCUR.
[1] Melvin and Mrs. Jankowski also stated in their claim to appellee that Robert's estate originated with Mrs. Jankowski, and Robert improperly removed the funds from Mrs. Jankowski's accounts or removed her name from the accounts. Therefore, in the claim submitted to appellee, Melvin and Mrs. Jankowski sought Robert's entire estate. They also made separate claims for the unpaid rent, taxes, insurance, etc. (Mrs. Jankowski's claim) and the "furnishing of necessaries" (Melvin's claim). When this suit was filed, however, Melvin and Mrs. Jankowski did not allege that Robert improperly gained Mrs. Jankowski's assets. Instead, they alleged only that appellee should have paid their claims for the unpaid rent, taxes, insurance, etc., and the "necessaries."
[2] This appeal deals only with the portion of the trial court's judgment relating to appellee's denial of Mrs. Jankowski's claim. Melvin does not appeal the portion of the trial court's judgment relating to appellee's denial of his claim.
[3] Appellee contends that the mutuality-of-benefits test does not apply where the claimant and the decedent were parent and child. According to appellee, the relationship of parent and child is so close that a family relationship must be presumed. Appellee relies for support on Woods v. Fifth-Third Union Trust Co. (1936), 54 Ohio App. 303 and its progeny. However, the Hamilton County Court of Appeals, the court that decided Woods, recently denounced the holding in Woods in favor of the mutuality-of-benefits test. See Estate of Combs, supra.