## In re GUARDIANSHIP OF BROCKMAN.

[Cite as *In re Guardianship of Brockman,* 160 Ohio App.3d 112, 2005-Ohio-1333.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 58.

Decided March 17, 2005.

James Dietz and Christopher Schiavone, for appellant.

VUKOVICH, Judge.

{¶ 1} Appellant, Alvin J. Weisberg, appeals from the decision of the Mahoning County Common Pleas Court, Probate Division, ordering him to pay $11,567.96 to Bertha Brockman's estate. Two issues are presented in this appeal. The first issue is whether the probate court abused its discretion in adopting the magistrate's decision that required Weisberg to pay the estate $11,567.96. The second issue is whether the trial court deprived Weisberg of his property without due process of law. For the following reasons, the probate court's decision is reversed and this case is remanded for a new hearing.

## STATEMENT OF CASE

{¶ 2} On March 28, 1989, the probate court found that Bertha Brockman was "incompetent by reason of mental deficiency," i.e., Alzheimer's disease. Harold Brockman, her husband, was appointed the guardian of her estate and her person.

{¶ 3} On January 30, 1992, Harold died. This necessitated the appointment of successor guardians for Bertha. Weisberg filed an application for appointment of successor guardian of an incompetent. On November 25, 1992, Weisberg was

appointed guardian over Bertha's estate, and Alan R. Kretzer, Bertha's nephew, was appointed guardian over her person.

{¶ 4} In January 1994, Weisberg filed with the probate court a motion for instructions. He informed the court that Bertha no longer had any of her immediate family in the Youngstown area and that her son, Sidney Brockman, requested that Bertha be moved from Youngstown, Ohio, to Seattle, Washington, where he lived. The court was further informed that the move had to be done by air ambulance and would cost approximately $12,000. Weisberg acknowledged that Bertha did not have the funds to pay for the move; however, he stated that she would "receive approximately $28,000 from her late husband's estate."

{¶ 5} On March 18, 1994, the probate court issued a judgment entry stating that neither the guardian of the estate nor the guardian of the person objected to the move. Therefore the court found "no reason not to permit said move and expend some of the funds which the Ward is expected to receive through the distribution of her late husband's Estate." In making this finding, the probate court acknowledged that Bertha was expecting to receive approximately $28,000 from Harold's estate. Bertha died January 16, 1996, as a resident of Seattle, Washington.

{¶ 6} On October 22, 2002, the probate court filed a citation upon delinquent account and orders to show cause, ordering Weisberg to appear on December 5, 2002. Weisberg appeared, presented his first partial account, and filed a motion to terminate the guardianship due to the ward's death. On April 11, 2003, the court took exceptions to the first partial account and ordered Weisberg to appear on May 29, 2003, to show cause why he should not be removed as guardian and subjected to further sanctions and orders. Weisberg appeared at the show-cause hearing.

{¶ 7} On March 4, 2004, the magistrate filed his decision on the exceptions to the first partial guardian's account. The magistrate recommended approving reimbursement of $540 to the Jewish Family Services for clothing purchased for the ward, despite the fact that prior approval was not obtained from the probate court. The magistrate also recommended that Weisberg not be held responsible for proceeds of a land sale action by the previous guardian, Harold. The magistrate then addressed the distributions made to Bertha from Harold's estate. The magistrate found that Weisberg's accounts showed that Harold's estate paid Bertha $18,406, while Harold's estate showed distributions in the amount of $29,973.96. The distributions occurred after Weisberg's appointment. Thus, the magistrate found that Bertha's estate had a deficiency in the amount of $11,567.96 and recommended that Weisberg be ordered to repay that amount.

{¶ 8} The probate court adopted the magistrate's decision that same day. Weisberg filed timely objections on March 18, 2004. In his objections, he

contends that the magistrate's decision did not contain sufficient findings of fact to allow the probate court to make an independent analysis of the case. The objections were overruled. Weisberg timely appeals, raising two assignments of error.

## ASSIGNMENTS OF ERROR

{¶ 9} "The probate court abused its discretion in ordering appellant to pay $11,567.96 to the estate of Bertha Brockman."

{¶ 10} "The trial court erred in depriving appellant of his property without due process of law."

{¶ 11} We will address Weisberg's assignments of error together since they raise similar arguments.

{¶ 12} We review the probate court's decision under an abuse-of-discretion standard of review. *In re Estate of Counts* (Sept. 18, 2000), 4th Dist. No. 99CA2507, 2000 WL 1572710, citing *In re Guardianship of Maurer* (1995), 108 Ohio App.3d 354, 359, 670 N.E.2d 1030. Abuse of discretion connotes more than an error of law or judgment; instead, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 13} Weisberg argues that the probate court arbitrarily ordered him to pay $11,567.96, the alleged discrepancy, "without attempting to contact the executor or counsel for the estate of Harold Brockman to determine when the distributions" were made to Bertha Brockman and who was caring for Bertha at the time of the distributions. He argues that he was unaware that the May 29, 2003 show-cause hearing would entail an inquiry into the estate of Harold Brockman. Thus, he contends that he was denied adequate notice to defend his accounting of Bertha's guardianship.

{¶ 14} The case before us is not complex. Either the estate of Harold Brockman made distributions amounting to $29,973.96 to the guardianship of Bertha Brockman, or it did not; and either the guardian of Bertha Brockman received these distributions from Harold's estate, or he did not.

{¶ 15} Thus, the question before this court is whether Weisberg should have known that the probate court was taking exception to his first partial accounting due to the information in the accounting of Harold's estate. We find that given this specific factual scenario, Weisberg was not aware that the May 29, 2003 hearing would delve into the distribution made by Harold's estate, and the probate court should have held an additional hearing addressing these distributions.

{¶ 16} Weisberg was neither a guardian nor a fiduciary of Harold's estate, which was over ten years old at the time of the show-cause hearing. Furthermore, in 1994 when Harold's estate was finalized, there was no requirement that he receive the final accounting. Likewise, it is noted that Weisberg contends that he never received a final accounting of Harold's estate. Additionally, Weisberg's statements made in the objections to the magistrate's decision show that he was surprised that Harold's estate distributions were at issue in the show-cause hearing.

{¶ 17} Moreover, further clouding the issue of whether the guardianship received the alleged distributions from Harold's estate is the fact Bertha lived in Seattle, Washington, near her son, when some of the alleged distributions from Harold's estate may have been made. This calls into question whether the distributions were made to her individually in Seattle, Washington, or whether they were made to her guardian in Youngstown, Ohio.

{¶ 18} Accordingly, in this specific factual scenario, a probate court abuses its discretion in ordering the guardian to pay the deficiency without holding an additional hearing to allow the guardian to address the issue that caused surprise, i.e., the ten-year-old estate in which he was neither a guardian nor a fiduciary and from which he did not receive a final accounting.

{¶ 19} Obviously, further proceedings in the probate court would greatly clarify the facts in this case. If we were to simply affirm the probate court's ruling instead of reversing and remanding the case for an additional hearing, Weisberg could be forced to pay $11,567.69 into the ward's estate for assets he never received. In remanding the matter for further proceedings, Weisberg will have an opportunity to examine the account of Harold's estate and present evidence to clarify the ultimate question that permeates this case. Accordingly, a new hearing allowing Weisberg to present evidence as to the distributions received from Harold's estate is warranted.

{¶ 20} For the foregoing reasons, the judgment of the probate court is hereby reversed and this case is remanded for a new hearing.

Judgment reversed
and cause remanded.

GENE DONOFRIO, P.J., and WAITE, J., concur.