OPINION
{¶ 1} Luis Macias Jr. (Appellant), a grandchild and heir of the decedent Guadalupe Macias (whose estate is Appellee), appeals the probate court's decision partially affirming the Administrator's decision to pay two particular claims. Reynaldo *Page 2 
Macias and Luis Macias Sr., the decedent's two sons, each filed a claim based on the care that he gave his father during the months before his death. Appellant contends that neither claim is valid and neither was timely filed. We will reverse with respect to Reynaldo's claim but affirm with respect to Luis's.
 {¶ 2} Here are the undisputed facts. Reynaldo and Luis cared for their seriously-ill father for several months before he died. Reynaldo lived with his father in the latter's Ansonia, Ohio, home, and Luis lived roughly sixty-miles away in Trenton, Ohio. They hired professional caregivers to be with him on weekdays until 4pm, when Reynaldo finished work. Luis drove to his father's home almost every night after work, arriving around 10:30pm. He stayed up most of the night so Reynaldo could sleep. In the morning, Reynaldo went to work and Luis, often after only a couple hours of rest, drove sixty miles back home to work too. If a caregiver could not make it on a particular day, Reynaldo stayed home from work. On weekends, they both stayed with their father.
 {¶ 3} Reynaldo and Luis cared for their father just like the professionals did and then some. They bought food and medicine for him, rubbed lotion on him, bathed him, changed his diaper, and gave him suppositories. They also paid his bills and took care of the rental properties that he owned. When they purchased needed items, they would sometimes do so with their own money.
 {¶ 4} Both sons sacrificed much to care for their father. Although under the Family Medical Leave Act they could miss work without fear of losing their jobs, they were not paid for those days. Reynaldo alone missed over 300 hours of work. Their efforts and sacrifices were not lost on their father, however. Reynaldo testified that their *Page 3 
father repeatedly reminded them to be sure that they took care of themselves too. "He always kept touching back to the fact that we want to make sure that he took care of that and we paid ourself (sic)." (Tr. 20). But they were focused on caring for him and told him that they would take care of that issue when the time came. When the probate court asked Reynaldo, "So what you're saying is-your testimony is that dad had indicated he wanted to reimburse you," Reynaldo replied, "Right." (Tr. 23).
 {¶ 5} Guadalupe Macias died testate on July 19, 2005. His will made his two sons and three grandchildren, Luis Jr., Thomas, and Philip, equal residual beneficiaries. In 2004 Guadalupe had signed two transfer-on-death deeds that transferred the titles of two rental properties-one to Reynaldo and one to Luis. On September 30, 2005, after the will was admitted to probate, Reynaldo was appointed Administrator of the estate. As Administrator he disbursed cash from the estate to compensate himself and Luis for the care that they had given their father. Each wrote an invoice in which he multiplied the number of hours he spent giving care by $10.00 per hour. (They chose this hourly rate because it was the rate at which they paid the professional caregivers.) On June 15, 2006, Reynaldo distributed $8,000 to himself for his claim, which is less than the number of hours that he spent caring for his father, but reflects what Reynaldo believed he should be paid considering that he lived in his father's house. The following month on July 26, 2006, Reynaldo distributed $20,000 to Luis.
 {¶ 6} At some point after these distributions were made, someone questioned their propriety. There is no written objection in the record, but it appears that the estate's attorney asked the probate court whether they were valid claims. The court held a hearing on December 18, 2007, "to determine the validity of distributions made *Page 4 
from the estate to . . . [Luis and Reynaldo] to reimburse said persons for care giving services provided to the Decedent before his death."
 {¶ 7} At the hearing the attorney for the estate told the probate court that the disbursements to Reynaldo and Luis were made without his knowledge. Because he needed to calculate the total distributions from the estate, he asked for the court's guidance on whether they were valid. The court then questioned Reynaldo and Luis on their claims. After doing so, it gave its decision orally. It said that each was entitled to some compensation for his claim but not the whole amount, and it awarded Reynaldo and Luis $6,000 and $15,000 respectively. The probate court's decision was memorialized the following month in a written judgment entry.
 {¶ 8} Luis Macias Jr., who was represented at the hearing and is an heir under the will, appeals this judgment, assigning a single error:
 {¶ 9} "THE TRIAL COURT ERRED IN GRANTING IN PART THE CLAIMS FILED AGAINST THE ESTATE BY THE ADMINISTRATOR WITH WILL ANNEXED AND HIS BROTHER FOR PERSONAL CAREGIVING SERVICES RENDERED TO THE DECEDENT BEFORE HIS DEATH."
 {¶ 10} An appellate court reviews a probate court's decisions under the abuse-of-discretion standard of review. In re Guardianship ofBrockman, 160 Ohio App.3d 112, 2005-Ohio-1333, at ¶ 12. An abuse of discretion is more than just an error of law or judgment. It implies, rather, that the trial court's attitude in rendering its decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. *Page 5 
 {¶ 11} Here, we must determine whether the probate court abused its discretion by awarding Reynaldo and Luis compensation for their claims. Appellant raises two issues: the timely presentment of the claims and their legal validity.
 {¶ 12} The timeliness issue was not preserved for appeal. An issue may not be raised for the first time on appeal. State ex rel. Ohio Civ.Serv. Employees Assn., AFSCME, Local 11, AFL-CIO v. State Emp. RelationsBd., 104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 10. After carefully reviewing the record, we found no indication that this issue was either brought to the probate court's attention or addressed by it.
 {¶ 13} Appellee, however, concedes that the probate court should not have awarded Reynaldo compensation for his claim because he did not present it within the period prescribed by R.C. 2117.02. Therefore, because both parties agree that the lower court erred, we sustain the assignment of error with respect to Reynaldo's claim.
 {¶ 14} The question of validity continues to hang over Luis's claim, however, even if the timeliness of the claim is assumed. Appellant asserts that when a claim is based on personal services rendered by one family member to another, Hinkle v. Sage (1902), 67 Ohio St. 256, 65 N.E. 999, requires the claimant to prove that an express contract existed between them, which Luis did not and cannot do. The rule inHinkle reads:
 {¶ 15} "In an action to recover compensation for services, when it appears that the plaintiff was a member of the family of the person for whom the services were rendered, no obligation to pay for the services will be implied; and the plaintiff cannot recover in such cases unless it be established that there was an express contract upon the one side to perform the services for compensation and upon the other side to accept the services and pay for them." Id. at syllabus. *Page 6 
 {¶ 16} Appellant's statement of the law is correct, butHinkle does not apply to Luis's claim because a "family relationship" did not exist between him and his father.
 {¶ 17} Application of this rule is predicated on the existence of a "family relationship." But a "[c]lose relationship, by blood or marriage, although the dominant consideration, is not alone sufficient to establish a family relationship. . . . The blood relationship of the parties is not controlling and is often inconsequential." In re Estateof Bowman (1956), 102 Ohio App. 121, 141 N.E.2d 499, 502. Indeed, "[o]n the issue of whether an individual is a member of the family of the person for whom services were rendered, the individual need not be related by blood or affinity." Outland v. Huffman (Aug. 13, 1982), Miami App. No. 82CA10, 1982 WL 3774, at *2. Instead, the test used to determine whether a "family relationship" exists is "whether a reciprocity or mutuality of benefits prevails between the parties." Id.
 {¶ 18} Household residence is a strong indicator of whether a mutuality of benefits, and therefore a family relationship, exists. "It is generally held that where the parties are not living together as a family, there is no reason for the rule requiring an express contract before allowing a claim for services rendered by a child to a parent . . ., and therefore the rule does not apply in this situation." 46 Ohio Jurisprudence 3d (2008), Family Law, Section 194. See Kroeger v.Ryder (1993), 86 Ohio App.3d 438, 445, 621 N.E.2d 534 (stating that "[f]or purposes of the [Hinkle] rule, family membership is generally not defined or circumscribed by blood relationship but, rather, by household residence"); Bemis v. Bemis (1948), 83 Ohio App. 95, 100, 82 N.E.2d 757
(refusing to apply the rule in Hinkle "where the parties do not live together as one household with reciprocal rights and duties"). This is true even in a parent-child relationship. See *Page 7 Estate of Combs (Mar. 13, 1998), Hamilton App. No. C-961056,1998 WL 107664 (rejecting a bright-line rule where the claimant was the son of the decedent, and remanding for the trial court to apply the mutuality of benefits test).
 {¶ 19} Here, it is clear that Luis, unlike Reynaldo who was living with his father, was not a member of his father's household during the time that he cared for him. In fact Luis had not been part of the household for some time. He lived and worked over sixty-miles away, and drove to his father's home nightly to care for him. Therefore,Hinkle does not apply to Luis's claim, and he need not prove the existence of an express contract.
 {¶ 20} Instead, "In the absence of a family relationship, one who renders services to another is entitled to a presumption that he is to be paid therefor." Outland, Miami App. No. 82CA10, 1982 WL 3774, at *1. Provided that there are "sufficient facts or circumstances to support the presumption, a contract between the parties will be implied." Id. Here, enough evidence exists in the record from which the probate court could have found support for such a presumption and implied the existence of a contract. We cannot say that the probate court abused its discretion by awarding partial payment to Luis. Therefore, we overrule Appellant's sole assignment with respect to Luis's claim.
 {¶ 21} The judgment of the probate court is affirmed in part and reversed in part. This case is remanded for further proceedings consistent with this opinion.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
Randall Breaden
Thomas L. Guillozet
Rhonda K. McKinniss
 Hon. Michael D. McClurg *Page 1