[Cite as *In re The Estate of Horn*, 2013-Ohio-5235.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

IN THE MATTER OF:                          :
                                           :            Appellate Case No. 25720
THE ESTATE OF WILMER HORN,        :
Deceased                                   :            Trial Court Case No. 11-EST-1786
                                           :
                                           :            (Probate Appeal from
                                           :             Common Pleas Court)
                                           :
                                           :
· · · · · · · · · · ·

## O P I N I O N

Rendered on the 27th day of November, 2013.

· · · · · · · · · · ·

JAY A. ADAMS, Atty. Reg. #0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
        Attorney for Appellant

CHARLES F. ALLBERY III, Atty. Reg. #0006244, Allbery Cross Fogarty, 137 North Main Street, Suite 500, Dayton, Ohio 45402
        Attorney for Appellee

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}   Appellant Gale Kilbarger appeals from an order overruling her objections to a magistrate's decision and denying her creditor's claim against her father's estate. Kilbarger contends that the probate court erred in finding that a family relationship existed between her and the decedent. She further contends that the trial court erred in finding that there was no express

oral contract between the decedent and Kilbarger for the decedent to reimburse Kilbarger for labor and materials expended repairing two of the decedent's properties.

**{¶ 2}** We conclude that the probate court's judgment is not against the manifest weight of the evidence. Accordingly, the judgment of the probate court is Affirmed.

### I. Kilbarger Makes Repairs to Two Properties Owned by her Father

**{¶ 3}** Kilbarger is the daughter of Wilmer Horn, the decedent. Initially, Kilbarger and her siblings agreed to repair her father's property at 258 Alaska Street, and her father agreed to reimburse them for the necessary materials, only. Work began on the Alaska Street property in March 2008. According to Kilbarger, she approached her father in August 2008 and explained to him that she could not continue to work on the property without assistance from her siblings. At that point, Kilbarger alleges that she entered into an express oral contract with her father to use her remodeling business to repair the property at 258 Alaska Street in exchange for payment for labor and materials.

**{¶ 4}** According to Kilbarger, her father also hired her business to make repairs to another one of his properties at 1020 Dodgson Court so that he could navigate the home in his wheelchair. Once again, Kilbarger alleges that her father promised to pay her for labor and materials.

**{¶ 5}** Kilbarger's siblings also performed some work at the Alaska Street property. Wilmer Horn II performed some repairs to the property when he resided there from 2003 to 2007. Furthermore, Donald W. Horn rewired the house on the Alaska Street property. Neither Donald nor Wilmer had any knowledge of the alleged express contract between Kilbarger and their father.

## II. Course of the Proceedings

{¶ 6}     Wilmer Horn died in August 2011.  His will was presented to the probate court in September 2011, and Kilbarger was appointed executor of the decedent's Estate.  The will provided that the decedent's assets would be divided equally between his six children.  According to the inventory and appraisal filed with the probate court, the Estate consisted of, among other things, decedent's interest in two parcels of real property located at 258 Alaska Street and 1020 Dodgson Court.

{¶ 7}     Kilbarger filed a creditor's claim against the Estate in the amount of $36,572.60 for remodeling and repairs to 258 Alaska Street and 1020 Dodgson Court performed by Kilbarger's company, Kilbarger's Remodeling.  Kilbarger subsequently filed an amended creditor's claim in the amount of $28,572.60, noting that the decedent had previously made an $8,000 payment toward the repairs made at 258 Alaska Street.

{¶ 8}     Following a hearing before a magistrate on the creditor's claim, the magistrate issued a decision rejecting Kilbarger's claim.  Kilbarger filed objections to the magistrate's decision.  The probate court overruled these objections and found that Kilbarger's claim was not a valid claim against the Estate.   From this judgment, Kilbarger appeals.

### III. The Trial Court Did Not Err in Finding that the

### *Hinkle v. Sage* Doctrine Applies to Kilbarger's Claim

{¶ 9}     Kilbarger's sole assignment of error states:

THE TRIAL COURT ERRED BY ADOPTING THE MAGISTRATE'S FINDING THAT THE *HINKLE V. SAGE* DOCTRINE APPLIED TO THE MATTER AT HAND.

{¶ 10} The standard set forth for manifest-weight-of-the-evidence appellate review in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies also in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. In applying this standard, the appellate court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983), cited approvingly in *Thompkins* at 387.

{¶ 11} Kilbarger contends that the probate court erred in finding that the *Hinkle v. Sage* doctrine applies to her creditor's claim. This doctrine provides:

> In an action to recover compensation for services, when it appears that the plaintiff was a member of the family of the person for whom the services were rendered, no obligation to pay for the services will be implied; and the plaintiff cannot recover in such case unless it be established that there was an express contract upon the one side to perform the services for compensation, and upon the other side to accept the services and pay for them.

*Hinkle v. Sage*, 67 Ohio St. 256, 65 N.E. 999 (1902), paragraph one of the syllabus.

{¶ 12} In order for the *Hinkle* doctrine to apply, there must be a family relationship between the decedent and the party seeking reimbursement. A reciprocity or mutuality of benefits between the parties is a requisite to a finding of a family relationship. *In re Estate of Bowman*, 102 Ohio App. 121, 141 N.E.2d 499 (2d Dist.1956), paragraph three of the syllabus.

The existence of a parent-child relationship and common residence are factors that, although not determinative, weigh in favor of finding a mutuality of benefits. *Kroeger v. Ryder*, 86 Ohio App.3d 438, 445, 621 N.E.2d 534 (6th Dist.1993). For example, in *Hinkle*, the Court found that a family relationship existed between the decedent and his daughter-in-law where the daughter-in-law lived in the decedent's home and the decedent paid some of the household expenses. *Hinkle* at 261-262.

{¶ 13} The probate court found that there was a family relationship between Kilbarger and her father. We agree. Kilbarger acknowledged that she lived in her father's home from 2007 until he died in 2011. Furthermore, Kilbarger was not responsible for paying the mortgage, insurance, or taxes on the property. Kilbarger, however, claimed that she and her sister paid for everything else, including the electric, gas, cable, phone, groceries, and cleaning supplies. This testimony conflicted with the evidence presented at the hearing that the decedent's check registry reflected that he made regular monthly payments for electric, gas, and a phone.

{¶ 14} The probate court found that Kilbarger's testimony regarding her payment of her father's monthly bills was not credible. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The probate court's finding that a family relationship existed between Kilbarger and her father is not against the manifest weight of the evidence.

{¶ 15} When the *Hinkle* family relationship doctrine applies, the claimant must prove,

by clear and convincing evidence, that there was an express contract between the claimant to perform the services for compensation and the decedent to accept the services and pay for them. *Merrick v. Ditzler*, 91 Ohio St. 256, 110 N.E. 493 (1915), paragraphs one and two of the syllabus. The contract may be written or oral, and may be proved by direct or indirect evidence. *Id.* at paragraph two of the syllabus.

{¶ 16} Kilbarger presented her testimony in support of her contention that she entered into an express contract with her father to perform work at the two properties in exchange for payment for labor and materials. The probate court, however, found that Kilbarger's testimony regarding the alleged oral contract with her father was not credible. Regarding the work performed at the Alaska Street residence, the probate court found, in part:

> In support of her testimony, Kilbarger offered Invoice No. 50, which was dated November 24, 2008. The invoice indicated that it was due on December 24, 2008. The invoice listed a total due of $27,126.00, plus tax, and six hours of labor at hourly rates varying from $3,127.00 to $6,262.00. The attached breakdown, which was not prepared contemporaneously with the invoice, indicated that Kilbarger Home Remodeling supplied some materials for the repairs. Kilbarger also offered photographs of 258 Alaska before and after the repairs. Finally, Kilbarger offered Check #3600, drawn on the account of Wilmer C. Horn and made payable to Kilbarger Home Improvement. The check was dated June 23, 2009, and was for $8,000. The memo line indicated that it was for "repairs [to] 258 Alaska."

Kilbarger's testimony regarding when and how she and Decedent entered into the contract was vague and was not supported by any other testimony or any credible documentary evidence. Kilbarger testified that she began creating the invoice sometime before November, 2008, and presented it to Decedent in July, 2009. Yet, the invoice indicated that payment was due December 24, 2008 – more than six months before it was presented. Further, the invoice grouped multiple tasks, assigned each group one hour of labor, and designated for each hour a rate ranging from $3,127.00 to $6,262.00. Thus, there was compelling evidence that the invoice was not prepared contemporaneously with the rendering of services and did not accurately reflect those services nor their associated hourly rates. Finally, the check, while credible, was dated more than one month prior to presentation of the invoice, and therefore lent minimal support to Kilbarger's claim that the check was evidence of payment pursuant to an express contract.

Not only was there a lack of credible evidence that Kilbarger and Decedent entered into an express contract, there was also credible evidence to the contrary. * * * Kilbarger and Donald [Horn] testified, and the entries in Decedents' check register demonstrated, that Decedent promptly paid his bills as he received them. Significantly, Decedent made no payments to Kilbarger after they allegedly entered into the express contract or after Kilbarger presented the invoice.

Dkt. 59, p. 6-8.

{¶ 17} The probate court also found that Kilbarger's testimony regarding the existence of an express contract to be reimbursed for work performed at the Dodgson Court residence was not credible. The court explained, in part:

Kilbarger's testimony regarding the circumstances under which she and Decedent entered into the contract was vague and unsupported by the evidence. Kilbarger testified that Kilbarger Remodeling performed approximately 150 jobs between November 2008 and September 2010. When pressed regarding the inconsistency between her testimony and the fact that the invoice was numbered 862, she testified that a computer malfunction necessitated the recreation of the invoice. She did not offer any explanation regarding the numbering of the recreated invoice, which was far in excess of any reasonable estimate regarding the numbering of the original invoice. Further, as detailed in the preceding section, there was ample evidence that Decedent promptly paid his bills as they were received, and no evidence that Decedent made any payments to Kilbarger after they allegedly entered into the express contract or Kilbarger presented him with the invoice. Accordingly, the Court finds that the Magistrate properly concluded that Kilbarger failed to present clear and convincing evidence that she and Decedent entered into an express oral contract.

Dkt. 59, p. 8-9.

{¶ 18} Kilbarger had the burden of proving the existence of an express contract by clear and convincing evidence. *Merrick v. Ditzler,* at paragraph two of the syllabus. Clear and convincing evidence means that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Barkley v. Barkley*, 119 Ohio App.3d 155, 168, 694 N.E.2d 989 (4th Dist.1997). The evidence presented at the evidentiary hearing regarding the existence of an express contract between Kilbarger and her father was at

best conflicting. Kilbarger relied almost solely on her own testimony. The probate court found that Kilbarger's testimony was less than credible. We defer to the probate court's credibility determination. *State v. DeHass*, at 231.

{¶ 19} We conclude that Kilbarger fell short of proving by clear and convincing evidence that she had entered into an express oral contract with her father to be reimbursed for services rendered at the two properties owned by her father. Therefore, the probate court's decision is not against the manifest weight of the evidence.

{¶ 20} Kilbarger's sole assignment of error is overruled.

## IV. Conclusion

{¶ 21} Kilbarger's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Jay A. Adams
Charles F. Allbery, III
Hon. Alice O. McCollum